GARRISON, Judge.
This is an appeal from a judgment of the district court rendered September 17,1984, granting Maxine Mason Morgan’s Rule for Alimony Pendente Lite and Child Support. The trial court judgment provides as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Maxine Mason Morgan, and against the defendant, John E. Morgan, for alimony and child support in the sum of $700.00 per month, payable $350.00 on the 15th of each month, first payment to be made for September 1, 1984, and for costs of this rule.”
Additionally, the trial court provided the following written reasons for judgment:
“This matter came before the Court on a rule for alimony and child support pendent lite.
The obligation of the defendant in rule is to pay child support and alimony out of income or assets.
The Court, therefore, will order the defendant in rule to pay alimony and child support in the amount of $700.00 monthly, payable $350.00 on the first of the month and $350.00 on the 15th of the month, the first payment being due as of September 1, 1984.”
From that judgment which we affirm, Mr. Morgan appeals.
FACTS & TESTIMONY
Plaintiff and defendant were married on June 4, 1975. They had one child as issue of the marriage. The child was eight years old at the time of trial. The instant appeal from the September 17th judgment deals only with alimony pendente lite and child support.[1]
I CUSTODIAL PARENT'S INCOME AND EXPENSES
The custodial parent is unemployable because of injuries she received on December *402 19, 1983 at the hand of her husband. She suffers from bilateral carpel syndrome, cervical spondylosis and hypertension. She takes several medications on a daily basis. Her sources of income are $60 per week from her husband under a juvenile court order and $31 a month in Food Stamps. As the father of the child has only paid the juvenile court sum twice, she and the child have apparently been living on a loan made by Mrs. Morgan’s adult married daughter. Additionally, Mrs. Morgan had taken out a loan from Greater New Orleans Homestead and has been paying her living expenses therefrom. Her expense list totals $1519.12 a month.
Defendant argued that his wife was working part-time as a sitter at Chateau Notre Dame. She testified that she had worked there in the past during the marriage, but had been unable to work there since the December 19th incident. Defendant could have subpoenaed his wife’s employment file at Chateau Notre Dame, but failed to do so.
II NON-CUSTODIAL PARENT’S INCOME AND EXPENSES
The non-custodial parent owns Big John’s Lounge and Bar at 2901 N. Conti St. It was purchased in 1972 for $10,500.00. Since that time, defendant remodeled the building, adding a beauty shop, four rooms on the back, a kitchen for the bar, and two upstairs rooms.
The bar makes about $500.00 on Tuesday nights due to a free fish promotion and $250.00 per night on the weekends.
Apparently, there is a lot of gambling at the bar and both “the house” and the employee “cutting” the game get a percentage. (TR. p. 12, 62, 75) The bar’s cut of the PAC-MAN machine is about $40.00 per week and it receives an undisclosed amount from a softball team that it sponsors in the Crescent City Softball League.
The bar formerly operated as a restaurant as well. John Banks, the major son of the defendant works at the defendant’s bar as manager and bartender. Banks testified that they have “loaned” the kitchen to the softball team so that the team could make some money. (TR. p. 51) Accordingly, there is no restaurant income at the present time.
The bar was almost totally paid. A $20,-000 mortgage was then taken on the property, $6,000 of which was used to pay off the prior mortgage. There is no testimony indicating what happened to the remaining $14,000.
In addition to the first bar, Big John’s Lounge at 2901 N. Conti, in 1983 defendant purchased one-third ownership in “Big John’s Hideaway, Inc.” at 744 Market Street for $4,000 — 5,000 (TR. p. 99). Mr. Morgan testified that the Market Street bar is not making any money. He then testified, however, that the money generated by the bar was being used to repair and renovate that building. The Market Street bar has two entrances, a kitchen, and 13 rooms upstairs. Mrs. Morgan testified that her husband asked her to charge 13 matresses on her credit card because he was renting the rooms out after 6 p.m. for the purpose of “running transit”.[2] When questioned about this income, Mr. Morgan stated that there were 10 rooms, not 13 and that they were not finished yet:
“No. That’s where all the money is going. We take it from the bar and put it back in to build it up.
* * * * * *
They’re (the rooms) just sitting empty.” (TR. p. 90)
In addition to the two bars, there is also a rental double at 2907 N. Conti purchased in 1980 or 1981 for $16,500.00.
The mortgage on this property totals “$13 — 14,000”. Mr. Morgan testified that one half is rented to a Lionel Williams who *403 is unemployed and two months past due in his rent payments.
Although someone was interested in renting the other half of the double, Mr. Morgan has decided not to rent it. He testified that he intends to move from the two room apartment over Big John’s Lounge where he presently resides to the vacant half at 2907 N. Conti. His usual rental price per half is $225 a month or a total of $450 a month. He further testified that when he moves he does not intend to rent the two room apartment where he presently resides because it is “too small”. He intends to use the space for storage.
In addition to the two bars and double, in 1983, Mr. Morgan purchased a taxicab for $6,300 which is part of the White Fleet Line. As of the trial date, he has just made the last payment on the vehicle. All payments were made in cash. In addition, he paid $1,500 for additional work on the taxi. Since its purchase, the cab has been driven commercially by his friend Robert Harris. Mr. Morgan initially stated that the cab was making no money, although he later stated he had received $50.00 from the cab that month. At one point in his testimony, Mr. Morgan claimed that he paid all of the expenses on the taxi, thus they were itemized on his expense list, whereas he later claimed that he did not pay the expenses because his partner said the expenses came out of the taxi revenue; hence his income tax returns failed to indicate any gross income from the taxi business, he stated, “Until you pay for a cab, you don’t file taxes, not until its paid for.” (TR. p. 99)
In addition to the two bars, the double, and the taxicab business, Mr. Morgan is employed as a winch operator at the riverfront. He is paid $16.00 an hour and works 4 hours for which he is paid for 8 hours. As of the date of the hearing, August 30, 1984, he had worked 800 hours that year. He has worked at the riverfront for 25 years.
Ill DISCUSSION
On appeal the standard of review in factual determinations is “manifest error” under Cantor v. Koehring Co., 283 So.2d 716 (La.,1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.,1979). It is apparent that the trial judge did not find Mr. Morgan a credible witness on the reputed lack of “cash flow”. Not only is the trial court judge not “manifestly erroneous” but it appears that he is eminently correct.
On appeal, defendant argues:
“The basic problems with the judgment are three:—
1. Defendant cannot pay out of “or assets” as he was enjoined by the court from disposing of, mortgaging, etc., any of the assets on June 29, 1984.
2. Defendant’s income alone cannot sustain this award.
3. Wife’s need not proven.”
It is apparent that defendant’s “income” can indeed sustain this award and the trial judge was correct in this finding.
Defendant seeks to “raise a red herring” by arguing that defendant cannot pay the support amounts out of his “assets” because he was enjoined from “alienating, hypothicating, selling, disposing of, (or) mortgaging” the assets. It is apparent that defendant is more than able to pay the support amount from his income without touching the assets. Lastly, as previously discussed, “need” has been proven on the record.
For reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.

. A prior judgment dated June 29, 1984 granted permanent custody of the child to the wife. That judgment has not been appealed, is now final, and is not before this court.

. The witness defined "running transit" as follows:
“Transit is when a man and a lady goes out, you know, for a while at night for sex purposes.” TR. p. 45-46